**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IN RE:

CARLA S. O'CONNER &                                          CASE NO.    05-40681-LMK

DEWEY B. O'CONNER, JR.,

    Debtors.                                                          Chapter 7

_____/

**ORDER DENYING U.S. TRUSTEE'S MOTION TO DISMISS**

THIS MATTER came before the Court for hearing on October 12, 2005, upon the United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b), filed on September 7, 2005 (Doc. 15) (the Motion). The Court has jurisdiction over this matter and this is a core proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1). Having considered the arguments presented by counsel and reviewed the pleadings and related documents submitted in this case, I hold that it is not a substantial abuse for the Debtors to receive relief under Chapter 7, and thus the Motion will be denied.

**FACTS**

The O'Conners filed their Chapter 7 bankruptcy petition on May 26, 2005. The Debtors' Schedule D lists four creditors with a total owed of $132,162.55. The obligations consist of a first mortgage on the Debtors' homestead in the amount of $67,657.77, a second mortgage on their homestead in the amount of $33,158.23, a loan in the amount of $24,759.34 secured by the Debtors' 2003 Chevrolet Trailblazer, and a loan in the amount of $6,677.21 secured by the Debtors' 1992 Harley Davidson motorcycle. The Debtors' Schedule F lists a total of 12 unsecured debts totaling $32,783.31, which represent debts owed for credit card purchases,

personal loans, or other similar consumer transactions. The Debtors are married and have no dependants.

The Debtors filed Amended Schedules I and J on October 11, 2005. Mrs. O'Conner works as a letter carrier for the United States Postal Service. Amended Schedule I represents that Mrs. O'Conner makes $3,833.67 in base pay per month, and lists an estimated $30.00 per month that she expects to receive in overtime pay per month. Amended Schedule I lists the following payroll deductions for Mrs. O'Conner:

| | |
|---|---|
| Payroll taxes and social security | $864.67 |
| Insurance | 248.32 |
| Union dues | 13.99 |
| Retirement | 30.68 |
| Medicare | 65.07 |
| Payment on 2 loans from retirement plan | 186.12[1] |
| Thrift Savings Plan contribution | 174.22 |

Accordingly, Schedule I reflects total payroll deductions for Mrs. O'Conner of $1,583.07, and net pay of $2,280.60 per month. Mr. O'Conner is disabled and receives $997.00 per month in disability as his only income, with no deductions. Amended Schedule I thus reflects $3,277.60 in monthly net income.

Amended Schedule J lists the following expenses of the Debtors:

---

[1] The Debtors further explained this expense: "(Thrift Savings Plan). This payment only be cancelled if Debtors convert to a Chapter 13. However, if Debtors convert to a 13, the unpaid balance of these loans are considered by the IRS to be taxable income and the Debtors may also be subject to a 10% IRS early withdrawal penalty. (See Schedule J.)"

| | |
|---|---:|
| Home mortgage payment | $700.00 |
| Electricity and heating fuel | 271.51 |
| Telephone | 70.00 |
| Cellular phone (2 cell phones, 1 year contract) | 75.00 |
| Heating fuel oil for home | 70.49 |
| AOL internet | 14.95 |
| Basic Satellite TV | 57.70 |
| Home maintenance | 50.00 |
| Food | 500.00 |
| Clothing | 75.00 |
| Laundry and dry cleaning | 25.00 |
| Medical and dental expenses | 39.17 |
| Transportation | 300.00 |
| Recreation, etc. | 50.00 |
| Homeowner's insurance | 54.10 |
| Life insurance | 27.56 |
| Auto insurance | 58.00 |
| Property insurance | 53.91 |
| Auto insurance on motorcycle | 62.50 |
| Real estate taxes | 21.08 |
| Motorcycle payment | 225.00 |
| 2nd mortgage - Household HFS | 550.00 |
| Haircuts and misc. toiletries | 100.00 |
| Vet bills & pet expenses | 49.18 |

Amended Schedule J also lists several expenses which were not listed on the Debtors' original Schedule J which the Debtors contend would be necessary expenses calculated over the next 2 years:

| | |
|---|---:|
| Repay wife's mother for car | 83.33 |
| New roof needed on home | 104.17 |
| Tree removal needed | 91.67 |
| Wife needs several moles & lesions removed | 21.67 |
| Thrift Savings Plan penalties & taxes | 217.90 |
| 1994 Ford Escort Repairs | 295.03 |

Including all the scheduled expenses, the Debtors' Amended Schedule J reflects $4,311.88 in monthly expenditures. From the Amended Schedules, it would appear that the Debtors have no net disposable income.

The United States Trustee filed this Motion on September 6, 2005, alleging that granting the Debtors relief in Chapter 7 would be a substantial abuse of the provisions of the Bankruptcy Code. The U.S. Trustee takes issue with both the income and expenses of the Debtor. She argues that the Debtors' income is understated and that several of the Debtors' expenses are unnecessary or unreasonably high. The Debtors maintain that they have no net disposable income and that allowing them to remain in Chapter 7 is not a substantial abuse of the system.

## DISCUSSION

The standard for dismissal for substantial abuse is set forth in § 707(b) of the Bankruptcy Code:

> After notice and a hearing, the court, on . . . a motion by the United States Trustee . . . May dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). Accordingly, the U.S. Trustee has the burden to prove that the Chapter 7 filing should be dismissed under this Code section. *See In re Cox*, 249 B.R. 29, 31 (Bankr. N.D. Fla. 2000). In the present case, there is no dispute that the Debtors are individuals with primarily consumer debt. The U.S. Trustee is thus left with the burden of proving that granting the Debtors a discharge in Chapter 7 would be a substantial abuse of the Code.

As this Court articulated in the *Cox* case, there are two approaches that different courts use in determining whether substantial abuse exists. *Cox*, 249 B.R. at 31. The first approach

considers only a debtor's ability to repay his debts and fund a Chapter 13 Plan. *Id.*, citing *In re Rushing*, 93 B.R. 750, 752 (Bankr. N.D. Fla. 1988) and *In re Dickerson*, 193 B.R. 67, 71 (Bankr. M.D. Fla. 1996)(citing cases from the Eighth and Ninth Circuit Courts of Appeals). Courts using the alternative approach in determining whether substantial abuse exists apply a "totality of the circumstances" test in which they evaluate factors relevant to the debtor's financial planning which could demonstrate substantial abuse. *Cox*, 249 B.R. at 31; *See In re Haddad*, 246 B.R. 27, 22 (Bankr. S.D. N.Y. 2000)(listing fifteen illustrative factors). There are no cases in Eleventh Circuit jurisprudence which would control this Court's determination of which approach to use in evaluating the Motion, but in the *Cox* case, this Court considered the ability of the debtor to "repay even a portion of his debts" as the primary factor in the Court's evaluation of whether or not substantial abuse existed. *Cox*, 249 B.R. 29, 31. Instead of just looking at the debtor's income minus the debtor's expenses, the Court considered other factors in its determination that allowing the debtor in *Cox* to remain in Chapter 7 was a substantial abuse of the Code. Accordingly, in this case, the Court will consider both the debtor's ability to repay as indicated by an analysis of the Debtors' income and expenses and as indicated by other factors surrounding the Debtors' filing of their bankruptcy petition.

First, the Court will consider the Debtor's income and expenses. The U.S. Trustee takes issue first with Mrs. O'Conner's income, claiming that it is understated in Schedule I. In filing their Amended Schedule I, the O'Conners admit that a mistake was made in calculating Mrs.

O'Conner's pay[2] which, combined with a small cost of living increase effective in October 2005, resulted in an increase of $349.67 per month which is reflected in the Amended Schedule I. The U.S. Trustee introduced Mrs. O'Conner's pay stubs, which reflected much more income from overtime than her current Schedule I lists, to show that Mrs. O'Conner's income is understated because she receives more overtime pay than she scheduled. However, at the hearing, Mrs. O'Conner testified that the post office where she works has hired a part-time worker to help with the work load, and that she has been told to expect, and does expect, that her ability to work overtime will cease. Her testimony was credible, and the Court accepts her explanation of the income discrepancy.

The U.S. Trustee then takes issue with both Mrs. O'Conner's voluntary contribution to her Thrift Savings Plan federal worker retirement account ("TSP") and with her payroll deduction for repaying a loan to her TSP.[3] It is clear that the voluntary contribution to her TSP is not considered reasonable or necessary for the support or maintenance of the Debtors'

---

[2] The incorrect income figure in the originally filed Schedule I was calculated bi-monthly, and Mrs. O'Conner is paid bi-weekly.

[3] Although it is not binding in this case, the Court notes that the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, provides that a Chapter 13 Plan may not alter the terms of a loan such as the one at issue here and that any amount required to repay such loan shall not constitute "disposable income" under § 1325. 11 U.S.C. § 1322(f).

maintenance. *See, e.g., In re Cohen*, 246 B.R. 658, 666; *Cox,* 249 B.R. at 32 (quoting *In re Heffernan*, 242 B.R. 812, 818 (Bankr. D. Conn. 1999). Therefore, the $174.22 per month would be added back in to the Debtors' net monthly income for a total of $3,451.82. The payroll deduction for the TSP loan repayment is more problematic for the U.S. Trustee. Although the Trustee is correct in pointing out that courts generally do not allow such repayments because the debtors would be effectively paying themselves back with creditors' money, the Debtors in this case raise a valid issue regarding the taxes and penalties associated with not paying back the TSP loan. The Debtors estimate those expenses as being $2614.85. If the Debtors had to pay the taxes and penalties, the IRS would get the money rather than the unsecured creditors anyway, so it appears that disallowing the TSP loan repayment income deduction would allow for little, if any, additional funds to repay creditors. Accordingly, the TSP loan repayment amount will not be added back in to the Debtors' income.

The final issue the U.S. Trustee raises with regard to the Debtors' Schedule I income involves the amount that the Trustee expects the Debtors to receive from their income tax refund next year. The Trustee contends that Mrs. O'Conner should decrease her number of withholdings so that she would receive her income now instead of as an income tax return, thus increasing her monthly net disposable income. The Debtors have received substantial tax refunds (in excess of $4,000.00) in prior years, so this concern is well-founded; however, although the Trustee did produce evidence that Mrs. O'Conner's percentage of withholdings remained the same, the Debtors income has decreased since Mr. O'Conner had to cease work due to his disability. Mrs. O'Conner testified that she hoped they would receive a tax refund in 2006,

but that she did not anticipate one. Since the Debtors' circumstances have changed from prior years, it is impossible for the Court to find, absent further evidence, that the Debtors will receive a refund similar to those prior years. Accordingly, the Court will not impute any additional income due to excessive withholding, and the Debtors' net income stands at $3,451.82.

Next, the U.S. Trustee contends that the Debtors' budget, as reflected in Amended Schedule J, includes items that are not reasonably necessary for the Debtors' support. First, the Trustee takes issue with the Debtors' budgeted expense for satellite television and phone and cell phone service. The Court has no problem with the Debtors' satellite television expense. The Debtors testified that they have satellite television because cable is not available where they live and that the $57 package they subscribe to is the most basic the satellite company offers. The Court will not require that the Debtors go without television altogether, as the U.S. Trustee appears to suggest they should. The phone bill is another matter. The home phone expense appears reasonable, but it *is* unreasonable for the Debtors to pay for service on two cell phones when Mr. O'Conner is disabled and generally home with the home phone available to him. The Debtors scheduled $75.00 for the cell phone service, and testified that it would cost approximately $40.00 to maintain just Mrs. O'Conner's cell phone. Mrs. O'Conner testified that she needs her cell phone because she lives fifteen minutes from work and is in her mail truck almost all day with no other way to communicate. Accordingly, the cell phone expense will be reduced by $35.00. This reduction brings the total amount allowed on Amended Schedule J to $4276.88.

The U.S. Trustee further argues that the $225.00 per month for the Debtors' Harley Davidson motorcycle is an unreasonable expense because it should be considered a "luxury vehicle," regardless of the fact that the Debtors only have one other running vehicle, which is Mrs. O'Conner's transportation to and from work. Because Mr. O'Conner is disabled and does not work, the U.S. Trustee apparently believes that he is not entitled to transportation. However, Mr. O'Conner testified that he uses the motorcycle to go back and forth to doctor appointments; without transportation, his wife would have to take off work to take him on his errands and appointments. The Trustee's cases regarding motorcycles as luxury goods are inapposite, as they deal not with motorcycles that are primary transportation but with motorcycles kept as recreational vehicles *in addition to* automobiles. *See, e.g., In re Manske*, 315 B.R. 838 (finding substantial abuse in a case in which the debtors bought a motorcycle and large screen television with credit cards on the eve of bankruptcy). None of the cases the Trustee cited, and none this Court could find, deal with a motorcycle that is a debtor's primary transportation. The $225.00 per month payment for the thirteen-year-old motorcycle is very inexpensive for primary transportation. Mr. O'Conner's credible and uncontroverted testimony was that without the motorcycle, the Debtors would have to get their old 1994 Ford Escort repaired, which would cost more than the car was worth. Again, any "savings" to be had by disallowing the motorcycle expense would be eaten up with payments to repair the other car. In this case the motorcycle is not a luxury good. Even though Mr. O'Conner is not working, he still has obligations and is entitled to transportation to be able to get health care and meet his other obligations. Accordingly, the $225.00 motorcycle payment is a reasonable and necessary expense.

The U.S. Trustee also raised several other minor objections to the Debtors' expenses, some in the Motion and others at the hearing, all of which can be disposed of summarily.  First, the Debtors' scheduled expense of $300.00 for transportation expenses is not excessive.  Mrs. O'Conner testified that she travels fifteen minutes to and from work every day, and the Debtors must pay for gasoline and maintenance for Mrs. O'Conner's truck and for the motorcycle.  No evidence was introduced to show that this expense is unreasonably high; therefore, it is allowed. Next, the $100.00 expense for haircuts and toiletries will be allowed because there was absolutely no evidence introduced as to its reasonableness.  Further, the Trustee's argument that the first mortgage payment should be reduced from $700.00 to $650.00 (the approximate amount reflected in the reaffirmation agreement) is not well-taken, as Mrs. O'Conner testified that the difference consisted of late fees or other fees that the Debtors generally paid, and that $700.00 per month was an accurate representation of the amount the Debtors actually have to pay to their first mortgage lender each month.  The Trustee also took issue with the amount budgeted for heating fuel and electricity.  While the Trustee did introduce evidence from the Debtors' check register that showed a lesser amount paid each month for electricity than what was scheduled, the Court considers that evidence incomplete and inconclusive, as the portion of the Debtors' check register introduced  reflected only  five months of the year, in which electricity costs may be lower than average. Accordingly, the Court will not reduce the scheduled expenses for utilities. Finally, the U.S. Trustee suggests that the Debtors' $500.00 per month food budget is too high. . Under the newly implemented provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the Debtors would be allowed *more* money for food as determined under the I.R.S. standards, which can hardly be said to be generous.  While these standards are not

binding in this case, they are a good frame of reference for reasonableness. Without any evidence that $500.00 is unreasonable, the Court will not find this amount excessive.

There are some expenses on the Amended Schedule J which are inappropriate which will be disallowed for purposes of this analysis. These expenses were intended to be illustrative of future expenses, but are not to be considered as "current expenses" and included on Schedule J. With the exception of the $83.33 per month to "repay Wife's mother for car," which is disallowed, the other future expenses are found on the Detailed Expense Attachment to Amended Schedule J under "Other Expenditures:"

| | |
|---|---:|
| New roof needed on home | $104.17 |
| Tree removal needed | 91.67 |
| Wife needs moles & lesions removed | 21.67 |
| Taxes & penalties on TSP loan repayment | 217.90 |
| 1994 Ford Escort repairs | 205.03 |

Reducing the expenses by these amounts, which total $723.77, reduce the Debtors' scheduled expenses to $3553.11, leaving a budget surplus of $101.29. Accordingly, it appears that the Debtors have a small amount of net disposable income, but this does not necessarily mean that they have the ability to repay their creditors. Other factors indicate that the Debtors do not have such an ability.

Many of the factors articulated by the court in *Haddad* are relevant in this case:

(1) whether the petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;[3] whether the debtor has engaged in "eve of bankruptcy" purchases; [4] whether unforseen or catastrophic events forced the debtor into chapter 7; [5] whether debtor's disposable income permits liquidation of consumer debts with relative ease; [6] whether there is no other choice available to the debtor for working out his financial problems other than chapter 7, and whether the debtor has explored or attempted other alternatives.

*Haddad*, 246 B.R. at 33 (citing *In re Carlton*, 211 B.R. at 478).  In this case, Mr. O'Conner had to quit work because he became disabled through no fault of his own.  The Debtors took substantial steps and made significant sacrifices in order to try to repay their debts prior to seeking relief in the bankruptcy court. They took out a second mortgage on their home and a loan against their retirement in an effort to pay back their creditors without filing bankruptcy.  Mrs. O'Conner testified that they tried to work out agreements with some of their creditors, but they just could not keep up.   They did not incur cash advances or make luxury or "eve of bankruptcy" purchases.  The Debtors have no extravagant expenses, and their very credible and uncontroverted testimony showed that they made a substantial effort to repay their creditors.  They simply could not keep continuing as they were, so they sought relief in bankruptcy.

Although the future expenses listed above are not allowable as monthly expenses in the Debtors' budget, they are the types of non-recurring expenses that make a repayment plan unworkable when the income and expense numbers are as close as they are here.  These future expenses are also a good demonstration of what the Debtors have foregone in an attempt to repay their creditors.  Their house needs a roof, diseased trees need to be removed from their yard, and Mrs. O'Conner needs to have a medical procedure performed.  The Debtors have not been racking up debt; rather, they have been trying to repay it, to the detriment of their health and their property.  It is clear to the Court that the Debtors have a demonstrated inability to repay their creditors or to fund a plan under Chapter 13.  The $101.29 of "extra" income each month is insufficient to both fund a plan and to support the Debtors.

## CONCLUSION

The U.S. Trustee has not met her burden in demonstrating that granting the Debtors relief

in Chapter 7 would be a substantial abuse of the Code. Accordingly, for the reasons articulated above, it is hereby

ORDERED AND ADJUDGED that the U.S. Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) is DENIED.

DONE AND ORDERED at Tallahassee, Florida, on November 23, 2005.

Lewis M. Killian, Jr.
Bankruptcy Judge